# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action Number |
| ) | 08-00169-01-CR-W-SOW |
| Ishmael Harris, ) | |
| ) | |
| Defendant. ) | |

## Report and Recommendation

Pending before the Court is the MOTION FOR ORDER SUPPRESSING EVIDENCE filed August 18, 2008 (Doc. #23) by defendant Ishmael Harris ("Harris"). On September 26, 2008, the undersigned held an evidentiary hearing on Harris' motion. Harris was present and was represented by his counsel, David Rauzi. The government was represented by Assistant United States Attorney Paul Becker. At the evidentiary hearing, the government called Officer Jonathan Going and Detective Paul Brooks both of the Grandview, Missouri Police Department. Harris called no witnesses. Seven exhibits were offered and received into evidence:

| | |
|---|---|
| Govt. #1 | Grandview Mo. City Ordinance, § 14-177 |
| Govt. #2 | Grandview Citation No. 061667051 |
| Govt. #3 | Grandview Citation Nos. 061667052, 061667053 |
| Govt. #4 | Affidavit and search warrant |
| Govt. #5 | DVD of traffic stop |
| Govt. #6 | Grandview Citation No. 061667051 |
| Deft. #1 | Photograph |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

# PROPOSED FINDINGS OF FACT

1. On June 11, 2008, Jonathan Going ("Officer Going") was on duty with the Grandview, Missouri Police Department. Tr. at 3-4.

2. As part of his police training with the Grandview, Missouri Police Department, Officer Going was instructed regarding the traffic ordinances and rules of Grandview. 4

3. At approximately 11:20 a.m. on June 11, 2008, Officer Going received dispatch information on his patrol car radio that the Jackson County Drug Task Force was following a black Chevy pickup truck that they wanted stopped. 4-5

4. Shortly after receiving the radio communication, Officer Going observed the pickup truck in question drive past him on Harry Truman Road, traveling westbound, in Grandview. 5-6

5. At a stop-signed intersection, Officer Going pulled up directly behind the black Chevy pickup and then began following the vehicle to see if it would violate any ordinances. 6-7

6. After following the pickup truck for a short time, Officer Going noted that the rear license plate cover was tinted ("slightly smoked"). 7-8

7. During this time period, however, Officer Going was able to get close enough to the pickup truck to read the numbers and letters and Officer Going called in the license plate number and was told that the plates were issued for a black Chevy pickup truck. 7, 23

8. Officer Going believed that the tinted cover violated the Grandview traffic ordinances because the "ordinance says that you can't have anything concealing the license plate, whether it be dirt, any sort of vanity item, tinted covers, plain plastic covers, anything." 7-8

9. Officer Going then activated his siren and lights and pulled the black pickup truck over. 8

10. The sole reason that Officer Going stopped the black Chevy pickup truck was because of the tinted license plate cover. 23

11. Ultimately, Officer Going issued a citation to Harris for violating GRANDVIEW MO. CITY ORDINANCE, § 14-177, for "operat[ing] a motor vehicle with tinted cover over the license plate." 15-16; Govt. #6.[1]

---

[1] The original citation was reissued the next day after Officer Going learned that Harris had provided a false identification and the original citation thus was in an incorrect name.

2

12. GRANDVIEW MO. CITY ORDINANCE, § 14-177 provides that:

> No motor vehicle or trailer shall be operated on any street of this city unless it shall have displayed thereon the license plate or set of license plates issued by the Director of Revenue of the State of Missouri and authorized by RSMo section 301.140. Each plate shall be securely fastened to the motor vehicle in a manner so that all parts thereof shall be plainly visible and reasonably clean so that reflective qualities thereof are not impaired. [2]

Govt. #6.

## PROPOSED CONCLUSIONS OF LAW

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses,[3] papers, and effects, against unreasonable searches and seizures, shall not be

---

Tr. at 17-18.

[2] Much of the remaining testimony adduced at the hearing concerned the events that occurred after Harris vehicle was stopped by Officer Going (the questioning of Harris, Harris' presentation and use of a false identification, the use of a dog to sniff Harris' vehicle, the discovery of contraband in the vehicle, the application for a search warrant to search Harris house, and the discovery of contraband in the house. However, Harris' motion to suppress is straightforward, to wit: Officer Going did not have sufficient grounds to stop the pickup truck for a traffic violation and, since the stop was improper, all of the ensuing evidence obtained is fruit of the poisonous tree. *See*, *e.g.*, *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415 (1963). To the largest extent possible, the Court has endeavored to limit its findings to only those factual and legal matters necessary to the recommendation rendered herein.

[3] The stop of an individual in an automobile raises many of the same concerns as a search of an individual's home.

> Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. As *Terry v. Ohio* recognized, people are not shorn of all Fourth Amendment protection when they step from their

3

violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. However, over the years, many exceptions to the warrant requirement have been recognized. For instance, and pertinent to the issue in this case, in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Id*. at 30, 88 S.Ct. at 1884. However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id*. at 27, 88 S.Ct. at 1883. Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is <u>not</u> dispositive for a constitutional

---

> homes onto the public sidewalks. Nor are they shorn of those
> interests when they step from the sidewalks into their automobiles.

*Delaware v. Prouse*, 440 U.S. 648, 662-63, 99 S.Ct. 1391, 1400-01 (1979).

4

analysis, rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763 (1984).

The rights protected by the Fourth Amendment are implicated in this case by Officer Going's decision to stop the pickup truck being driven by Harris and thereafter to detain him while awaiting the arrival of a canine unit. *Delaware v. Prouse*, *supra*, 440 U.S. at 653, 99 S.Ct. at 1395. However, it well-settled that "[a]n investigation stop does not violate the Fourth Amendment if the police have a reasonable suspicion that the vehicle or its occupants are involved in criminal activity." *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999). In this case, as essentially conceded by the parties, the efficacy of Harris' motion to suppress turns on whether Officer Going had the requisite reasonable suspicion to stop the pickup truck because of the tinted license plate cover. If he did have the requisite reasonable suspicion, the stop was proper and all of the incriminating acts that transpired thereafter are admissible. *See*, *e.g.*, *United States v. Thomas*, 93 F.3d 479, 485 (8th Cir. 1996) (police have authority to stop a vehicle when there is probable cause to believe that a traffic violation has occurred). On the other hand, if the traffic stop was improper, then the ensuing incriminating evidence may be subject to suppression.

As previously noted, the municipal ordinance at issue provides:

> No motor vehicle or trailer shall be operated on any street of this city unless it shall have displayed thereon the license plate or set of license plates issued by the Director of Revenue of the State of Missouri and authorized by RSMo section 301.140. Each plate shall be securely fastened to the motor vehicle in a manner so that all parts thereof shall be plainly visible and reasonably clean so that reflective qualities thereof are not impaired.

GRANDVIEW MO. CITY ORDINANCE, § 14-177. The key term is "plainly visible." The ordinance does not further define the phrase. The same phrase is utilized (but again undefined) in the Missouri state statute governing display of vehicle license plates:

> No motor vehicle or trailer shall be operated on any highway of this state unless it shall have displayed thereon the license plate or set of license plates issued by the director of revenue or the state highways and transportation commission . . . . Each such plate shall be securely fastened to the motor vehicle or trailer in a manner so that all parts thereof shall be plainly visible and reasonably clean so that the reflective qualities thereof are not impaired. Each such plate may be encased in a transparent cover so long as the plate is plainly visible and its reflective qualities are not impaired.

MO. REV. STAT. § 301.130.5

In determining the validity of Officer Going's decision to stop the pickup truck, it is important to note that the issue is not limited to whether – in fact – the tinted license plate cover was a violation of GRANDVIEW MO. CITY ORDINANCE, § 14-177. Rather, the issue is broader and encompasses not only an undeniable violation of the law but also whether the Court can find that any mistake of law was "objectively reasonable." *See*, *e.g.*, *United States v. Allegree*, 175 F.3d 648, 650 (8th Cir. 1999); *United States v. Grennell*, 148 F.3d 1051, 1052 (8th Cir.1998) ("officer has probable cause to stop a vehicle if he or she 'objectively has a reasonable basis for believing that the driver has breached a traffic law'").

For instance, in *United States v. Martin*, 411 F.3d 998 (8th Cir. 2005), the Eighth Circuit affirmed the denial of a motion to suppress based on an officer's objectively reasonable (albeit mistaken) belief that operating a motor vehicle with one non-functioning brake light violated a provision of tribal law. *Id*. at 1001-02. The court found that the mistake was objectively reasonable based on the statute's "counterintuitive and confusing" language and concluded that

6

"the level of clarity [of the statute] falls short of that required to declare [the officer's] belief and actions objectively unreasonable under the circumstances." *Id.* at 1002. The officer argued that his mistaken interpretation of the law (*i.e.*, that it required two functioning brake lights) was "common knowledge." In light of the ambiguities in the statute, the *Martin* court noted that the following factors would be relevant to the objective reasonableness of the officer's belief:

> [T]the drafting history of the Code, prior enforcement of the Code's provision concerning 'stop lights,' the training of police concerning the requirements of the Code, or previous judicial interpretations of the 'stop lights' provision.

*Id.* at 1001.

While there is some suggestion that Officer Going was trained to consider the tinted license plate cover as a violation of the Grandview traffic code, there is no evidence before the Court concerning the drafting history of GRANDVIEW MO. CITY ORDINANCE, § 14-177 or judicial interpretation of the language of the ordinance. However, there is some judicial interpretation of the Missouri statute that is somewhat supportive of Officer Going's interpretation of "plainly visible."

In *State v. Pondexter*, 941 S.W.2d 533 (Mo. App. [W.D.] 1997), a criminal defendant appealed his conviction. The defendant had been arrested after contraband was found in his vehicle following a traffic stop. The defendant argued that the arresting officer lacked reasonable suspicion to stop the vehicle. The officer had stopped the vehicle (which had tinted windows) based on the belief that it was not displaying a license plate. After stopping the vehicle and approaching the car, the officer shined his flashlight into the tinted back window of the car and thought he saw a temporary license plate on the windshield. The officer then continued with the detention of the defendant, eventually discovering contraband in the vehicle.

7

On appeal, the defendant argued that once the officer saw the license plate, he lacked reasonable suspicion that criminal activity was afoot. The court disagreed, noting that both Missouri law [MO. REV. STAT. 301.130] and the local municipal ordinance require license plates to be "plainly visible." *Id.* at 535. The Court concluded

> [The officer] testified that the rear window on [the defendant's] car was so heavily tinted that he could not see the temporary tag until he stood next to it and that he had to use his spotlight and flashlight to see it even then. [The officer] had reason to believe that the license plate was improperly displayed under state and local laws.

*Id.* In this case, Officer Going gave the following similar testimony:

> Q: And then so would it be fair to say that you were able to read the numbers and letters that were on that license plate in order [to run the plate numbers through the computer]?
>
> A: Yes. I had to get right up on the vehicle to get the license plate.

Tr. at 23. Under these facts, the Court concludes that Officer Going had reason to believe that the license plate was improperly displayed under the Grandview ordinance.[4]

Further bolstering the reasoning of the Court is the Missouri statute regarding the proper display of license plates. In 2007, the legislature amended the statute to add the language:

---

[4] This conclusion is further supported by decisions involving traffic laws from states other than Missouri. *See*, *e.g.*, *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) (involving North Dakota law) ("[W]e agree that the deputy lawfully stopped [the defendant] because [the defendant's] truck had no license plates and the dark tint of the rear window prevented the deputy from seeing the temporary registration application."); *United States v. Dexter,* 165 F.3d 1120, 1123-26 (7th Cir.1999) (involving Wisconsin law) (because the officer could not see temporary registration sticker through darkly tinted windows, the officer had reasonable suspicion to believe he was witnessing traffic violation and could lawfully stop vehicle even though no traffic violation actually occurred).

8

> Each such plate may be encased in a transparent cover so long as the plate is plainly visible and its reflective qualities are not impaired.

MO. LEGIS. S.B. 384 (June 26, 2007) (*codified at* MO. REV. STAT. § 301.130.5).  Implicit in the amendment is that a license plate cover that is not transparent is prohibited.  Also implicit, is the understanding that a license plate cover – even if transparent – is prohibited if it renders the plate less than "plainly visible."  The Court will not engage in a protracted discussion over the definitions of "transparent" and "plainly visible."  Suffice it to say that the Court finds sufficient ambiguity in the terms that, at a minimum, if there was a mistake of law herein, the mistake was objectively reasonable and the ensuing traffic stop was constitutional.

Because the Court does not find any constitutional infirmary with the traffic stop, the Court need not reach the issue of whether incriminating evidence flowing from the stop should be suppressed as fruit of the poisonous tree.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Harris' MOTION FOR ORDER SUPPRESSING EVIDENCE filed August 18, 2008 (Doc. #23).

Counsel are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same.  A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

*/s/ John T. Maughmer*
**John T. Maughmer**
**United States Magistrate Judge**
